GEORGE LISTER, d/b/a Blackhawk Improvement Company, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Hubert P. DeLoose, Appellee).— HUBERT P. DeLOOSE, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (George Lister, d/b/a Blackhawk Improvement Company, Appellant).

Third District (Industrial Commission Division) Nos. 3—86—0095WC, 3—86—0096WC cons.

Opinion filed November 6, 1986.

Hubbard B. Neighbour, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellant.

Allan Hartsock, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Claimant, Hubert DeLoose, filed an application for adjustment of claim under the Worker's Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) for personal injuries which allegedly arose out of and in the course of his employment with respondent, George Lister, d/b/a Blackhawk Improvement Co. After a hearing conducted on September 15, 1982, the arbitrator awarded the claimant permanent total disability compensation of $114.08 per week for the remainder of his life (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(f)) and $165,610.82 in reasonable and necessary medical expenses (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(a)). On review the Industrial Commission affirmed the decision of the arbitrator. The circuit court confirmed the decision of the Industrial Commission and awarded petitioner an additional $49,608.22 in medical expenses. The respondent has appealed to this court pursuant to Supreme Court Rule 22(g) (103 Ill. 2d R. 22(g)). We note that although this cause has been stylized as an appeal by respondent and a cross-appeal by claimant, the only party raising an issue on appeal is respondent.

Respondent's only contention on appeal is that the Industrial Commission's finding that claimant was an employee of respondent rather than an independent contractor is contrary to the manifest weight of the evidence.

The record indicates that, beginning in 1977, claimant, an aluminum-siding applicator, worked on several siding jobs obtained by respondent, a home-improvement contractor. On October 28, 1977, claimant fell from a ladder while applying siding on one of these

jobs. Claimant sustained extensive personal injuries from this fall which rendered him paraplegic. The following evidence is relevant in determining the fundamental issue of whether claimant was an employee of respondent or an independent contractor at the time the injuries occurred.

Respondent testified that he had operated Blackhawk Improvement as a sole proprietorship for about 12 years. With the exception of a secretary who worked for him for about three years, respondent never withheld income or social security taxes or paid unemployment compensation insurance for any person performing work for his business. Respondent treated persons working for him other than his secretary as "subcontractors" who were required to pay their own taxes and insurance.

Although respondent's business encompassed virtually every type of home improvement, the application of aluminum siding constituted a major portion of his business. Respondent estimated that when claimant was injured, siding application constituted 90% of his business. Respondent testified that six or seven siding applicators were working for him at this time. Respondent considered everyone who worked for him "full time because I don't like to switch around no more than I have to."

Respondent made each siding applicator sign a "subcontractor's form" prior to each job. This instrument stated that the siding applicator was to furnish his own tools, equipment, and workmen's compensation and general liability insurance. According to respondent, this form was used to reduce his cost of doing business by eliminating the obligation to pay social security and unemployment taxes and workers' compensation insurance premiums. Respondent had claimant sign several of these forms in advance for the sake of convenience.

While "subcontractors" such as plumbers, electricians, carpenters, and roofers submitted bills to respondent, which such subcontractors prepared themselves, siding applicators were paid a certain amount per piece installed (e.g., soffits, gutters, and panels) which, though determined by respondent, was based upon generally accepted rates paid to siding applicators by other home-improvement contractors in the area. When a dispute arose as to the amount of payment, respondent and the siding applicator would settle it between themselves. The assignment of work to all "subcontractors" was respondent's prerogative. After claimant was injured, respondent, not claimant, determined who would finish the job.

Apparently, all "subcontractors" furnished their own tools. Al-

though it is unclear who was responsible for supplying building materials to the "subcontractors," it is clear that respondent was solely and exclusively responsible for supplying the materials applied by the siding applicators.

Although siding applicators working for respondent were not required to account for their time, respondent frequently visited each work site to inspect the progress and quality of work. If either the progress or the quality of work failed to meet his approval, respondent would take corrective action. For example, when claimant was behind on the progress of a job, respondent himself helped claimant to complete the job. Respondent stated that he would tell his siding applicators to correct deficiencies he noted in their workmanship and that they would not be hired again if they did not meet his standards of quality and efficiency. Conversely, respondent was apparently most concerned with the cost, rather than the efficiency and quality, of work of "subcontractors" who submitted bills to him.

Some of respondent's siding applicators worked in teams; some, like claimant, worked alone. Respondent maintained that teams were paid a lump sum for each job and that the division of this sum was left to the team's discretion. On one occasion, however, respondent assigned an 18-year-old man to assist on a job on which claimant was working. Claimant related that he had not requested this assistance and that his pay was "docked" by an amount which he assumed respondent attributed to the labor of the young man. Respondent neither confirmed nor denied claimant's assertion regarding the amount claimant was paid on this occasion.

Claimant testified as follows: He had worked as a siding applicator for 20 years prior to the instant fall. Although he worked for several home-improvement contractors during these years, claimant tried to "stay in good" with one contractor at a time. During 1977, he worked exclusively for respondent even though respondent employed him only half the time (approximately 12 jobs). It is apparently conceded that respondent paid claimant $2341.15 during 1977.

On one occasion respondent took claimant from his current job site to a prior job site. Respondent instructed claimant to do additional work at the prior job site. On several occasions claimant transported materials to his job site with respondent's truck. Although claimant was purchasing this truck from respondent prior to the fall, respondent kept title to and possession of the truck.

All contractors, including respondent, paid claimant the same piecework rate. No contractors, including respondent, deducted social security or income taxes from claimant's pay. Most contractors, in-

cluding respondent, required claimant to sign a "subcontractor's form" as a precondition for employment. Claimant admitted that this form purportedly made him a "subcontractor."

■ Respondent asserts that the instant case may be distinguished from all other siding-applicator cases (*Kirkwood v. Industrial Com.* (1981), 84 Ill. 2d 14, 416 N.E.2d 1078; *Kirkwood Brothers Construction v. Industrial Com.* (1978), 72 Ill. 2d 454, 381 N.E.2d 697; *Mastercraft Co. v. Industrial Com.* (1974), 58 Ill. 2d 155, 317 N.E.2d 522; *Greenberg v. Industrial Com.* (1961), 23 Ill. 2d 106, 178 N.E.2d 646; *Mazur v. Industrial Com.* (1984), 124 Ill. App. 3d 325, 464 N.E.2d 721) because the parties in this case clearly understood through the "subcontractor form" that their relationship was that of contractor/subcontractor. Although this understanding is a factor to consider in determining claimant's status, it does not, as a matter of law, establish such status. See *Wenholdt v. Industrial Com.* (1983), 95 Ill. 2d 76, 80, 447 N.E.2d 404, 406.

Since many jobs contain elements of each, there is no clear line of demarcation between the status of employee and independent contractor. (*Kirkwood v. Industrial Com.* (1981), 84 Ill. 2d 14, 20, 416 N.E.2d 1078, 1080.) It may therefore be necessary to consider a number of factors with evidentiary value, such as right to control the manner in which work is done; method of payment; right to discharge; skill required in the work to be done; who provides tools, materials, or equipment; whether the workmen's occupation is related to that of the alleged employer; and whether the alleged employer deducted for withholding tax. The right to control work is the single most important factor in determining the parties' relationship. (*Wenholdt v. Industrial Com.* (1983), 95 Ill. 2d 76, 80-81, 447 N.E.2d 404, 406-07.) Moreover, the Industrial Commission's finding after considering these factors will not be disturbed unless the finding is contrary to the manifest weight of the evidence. *Kirkwood v. Industrial Com.* (1981), 84 Ill. 2d 14, 20, 416 N.E.2d 1078, 1080.

As previously noted, the parties provided through written agreement that their relationship was contractor/subcontractor. Furthermore, it is undisputed that respondent did not withhold any taxes from claimant's pay. These factors favor the determination that there was an independent-contractor status.

While respondent paid "subcontractors" such as plumbers, electricians, carpenters, and roofers in accordance with bills prepared by these "subcontractors," siding applicators were paid a certain amount per piece which had been established by area home-improvement contractors. Since these contractors, including respondent, set

these piecework rates for all siding applicators, and since respondent calculated the number of pieces each applicator installed, the method of payment favors the determination that claimant's status was as an employee.

Respondent testified that he reserved the right not to rehire "subcontractors" if they failed to meet his standards of cost, efficiency, or quality. In the case of "subcontractors" who submitted bills, respondent apparently paid close attention to cost. In the case of siding applicators, respondent paid specific attention to efficiency and quality, apparently because he knew his labor cost was fixed by the piecework rate. Although respondent could justifiably refuse to rehire any "subcontractor" working for him, we note that respondent apparently exercised a much greater degree of authority over the individual activities of the siding applicators than he did over the activities of other "subcontractors." However, as it is not clear that respondent had the right to discharge siding applicators more easily than other "subcontractors," we must find this factor inconsequential.

The parties agree that claimant was a skilled workman at the time he was injured. However, this factor is of little consequence because claimant's ability to use his skill in a competitive manner was forestalled by the piecework rates for siding installation fixed by the area home-improvement contractors.

Claimant furnished his own tools for the work he performed; respondent provided the materials. We therefore find that this factor is inconsequential.

Respondent testified that in 1977, the year claimant was injured, siding application constituted about 90% of his business. Since claimant was working as a siding applicator at the time he was injured, claimant's occupation was strongly related to respondent's business. This factor favors the determination that claimant was an employee.

The balance of factors thus far is relatively equal. We now consider the degree of control respondent exerted over claimant's work.

■ "An independent contractor is often defined as one who renders service in the course of a recognized occupation, and who executes the will of the person for whom the work is done with respect to the result to be accomplished, rather than the means by which the result is accomplished." (*Henry v. Industrial Com.* (1952), 412 Ill. 279, 283, 106 N.E.2d 185, 187.) Thus, the crucial inquiry is the degree of control respondent exerted over the means by which claimant completed his tasks.

■ Although claimant was paid piecework and not by the hour,

respondent frequently visited his job site to inspect the quality and progress of the work. When claimant's job was not progressing quickly enough, respondent either helped claimant himself or brought in someone else to help claimant. Whereas teams of siding applicators were paid a lump sum which the team members were to divide among themselves, claimant often worked alone. When respondent brought in an 18-year-old helper to speed the progress of the work, claimant did not split his pay from the job with this young man. Instead, claimant stated that his pay was "docked" for aid which he did not solicit. Claimant further testified that on one occasion respondent took claimant from his current job site to a prior job site, where claimant performed additional work pursuant to respondent's instructions. Moreover, it is undisputed (1) that claimant used respondent's truck to haul materials purchased by respondent to claimant's job site, (2) that claimant signed several blank "subcontractor's forms" in advance of work for the sake of convenience, and (3) that both claimant and respondent considered claimant "full time." After reviewing this evidence, we conclude that respondent exerted a significant degree of control over the means by which claimant accomplished his work. Consequently, the Industrial Commission's finding that the balance of factors in the case at bar favors the determination that claimant's status was that of employee rather than independent contractor is not contrary to the manifest weight of the evidence. The circuit court's ruling confirming the Industrial Commission's decision must therefore be affirmed.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

WEBBER, P.J., and BARRY, LINDBERG, and McNAMARA, JJ., concur.