WAYMOND BRYANT, Plaintiff-Appellant, v. THEODORE A. FOX *et al.*, Defendants-Appellees.—CID EDWARDS, Plaintiff-Appellant, v. THEODORE A. FOX *et al.*, Defendants-Appellees.

First District (4th Division) Nos. 86—2806, 86—2807 cons.

Opinion filed September 30, 1987.

Lane & Munday, of Chicago (Stephen I. Lane, of counsel), for appellants.

Wildman, Harrold, Allen & Dixon, of Chicago (Douglas L. Prochnow and Carl R. Burnton, of counsel), for appellees Theodore A. Fox and Lakeview Orthopaedic Associates, Ltd.

Terrence J. Goggin and Steven D. Pearson, both of Goggin, Cutler & Hull, of Chicago, for appellee The Chicago Bears Football Club, Inc.

JUSTICE JIGANTI delivered the opinion of the court:

Waymond Bryant and Cid Edwards, the plaintiffs, were professional football players for the Chicago Bears. They brought a medical malpractice action against defendant Dr. Theodore A. Fox, an orthopedic surgeon retained by the Bears. They also brought an action against defendant Chicago Bears Football Club, Inc., under the theory of *respondeat superior*, based on an allegation that Dr. Fox was an employee of the Bears'. Both Dr. Fox and the Bears filed section 2—619 motions to dismiss (Ill. Rev. Stat. 1985, ch. 110, par. 2—619) on the grounds that the plaintiffs' claims were barred by the exclusive-remedy provision of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.5). This provision protects employers covered by the Act by limiting an employee to his statutory remedy and

prohibiting common law actions against the employer or co-employee. The trial court granted the motions to dismiss, and the plaintiffs have appealed, contending that the Bears were not covered by the Act at the time relevant to this proceeding and that consequently both the Bears and Dr. Fox were amenable to common law actions. They also contend that even if the Bears were covered by the Act, both the plaintiffs and Dr. Fox were retained by the Bears as independent contractors rather than employees and were not co-employees for purposes of the Act.

Coverage under the Workers' Compensation Act comes about in one of two ways. First, an employer may elect to be bound by the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 138.2.) The Bears did in fact elect coverage in 1982. However, the plaintiffs alleged that their injuries and subsequent treatment by Dr. Fox occurred in 1975 and 1977, several years before the Bears' election. Second, sections 3(1) through 3(18) of the Act provide automatic coverage for employers engaged in certain enumerated businesses which are declared to be ultrahazardous. (Ill. Rev. Stat. 1985, ch. 48, pars. 138.3(1) through 138.3(18).) It is this section that is in issue in the case at bar. However, the Bears' motion to dismiss does not state which section of the automatic-coverage provision applies to them. The record does contain a copy of a 1982 decision by an Illinois Industrial Commission arbitrator concluding that the Bears were automatically covered by section 3(17)(a) of the Act, which applies to "[a]ny business or enterprise in which goods, wares or merchandise are sold or in which services are rendered to the public at large." (Ill. Rev. Stat. 1985, ch. 48, par. 138.3(17)(a).) The arbitrator based his decision on testimony by the Bears' general manager that the Bears sold magazine-type programs at the football games. According to the bystander's report of proceedings, the trial court relied upon the arbitrator's decision in concluding that the Bears were automatically covered by the Act prior to their election of coverage in 1982. The plaintiffs on appeal contend that the trial court erred in granting the motions to dismiss on the ground that the Bears were one of the employers automatically covered under the terms of the Act.

■ It is well established that a party raising an affirmative defense in a motion to dismiss must allege or establish facts supporting the affirmative defense. (*Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 114, 387 N.E.2d 878.) However, as previously stated, the motion to dismiss filed by the Bears does not specify which of the 18 subsections apply to them for purposes of the automatic-coverage provision of the Act. Professional sports clubs are not among the enumerated

businesses. The only evidence before the trial court on this issue was a copy of a 1982 arbitrator's decision finding that the Bears were covered by subsection 17, which involves selling goods to the public. It appears that the arbitrator's decision was based on testimony by the Bears' general manager that the Bears sold "magazine-type programs" to the public. However, the arbitrator's decision involved a claim by a player injured in 1980 and the testimony relied upon to support that decision necessarily related to the Bears' activities at that time. The plaintiffs in the case at bar alleged that the injuries and subsequent treatment by Dr. Fox occurred in 1975 and in 1977, several years prior to the time period considered by the arbitrator. Thus, even if the arbitrator's decision could be relied upon by the trial court as evidence that the Bears sold programs to the public and were therefore covered by the Act in 1980, it could not be used as support for the conclusion that the Bears were engaged in that activity at the earlier time relevant to the instant proceedings. Because the record in the case at bar contains no showing that the Bears were covered by the Act, we conclude that the trial court erred in granting the motions to dismiss on that basis and that the cause must be remanded for further proceedings in connection with that issue.

Should the trial court find upon remand that the Bears were in fact covered by the Act in 1982, the question of whether Dr. Fox and the plaintiffs were employees as opposed to independent contractors will determine whether they are amenable to the instant common law actions. For that reason, we will consider the plaintiffs' claims that the trial court erred in finding as a matter of law that both the plaintiffs and Dr. Fox were employees of the Bears.

The documents before the trial court established the following facts concerning the relationship between the Bears and Dr. Fox. Dr. Fox was retained by the Bears in 1947 to render medical care to injured Bears' players. He was required to treat all injured players upon request, both during the regular season and the off season, and to report the treatment to the Bears' management. All anticipated treatment and surgery were discussed with the player and the Bears, either of whom could veto the proposed action. Dr. Fox did not bill the individual players for treatment. The record further shows that the agreement between the Bears and Dr. Fox required him to perform preseason physicals, which took place at Illinois Masonic Hospital. He was to attend all regular season games but could send a substitute subject to the Bears' approval. Dr. Fox was not obligated to attend preseason games or practices, but could do so at his convenience.

With respect to compensation and benefits, the record shows that Dr. Fox was paid an annual retainer of $12,000, which covered the preseason physicals and all treatment other than surgery. If surgery was required, Dr. Fox received fees for each surgery based upon the nature of the injury, the time involved and the complexity of the procedure. According to his discovery deposition, Dr. Fox had a very busy practice aside from the Bears and the compensation paid to him by the Bears represented "very much less" than 10% of his income. Unlike employees of the Bears, Dr. Fox was not offered group medical insurance, life insurance or paid vacations, and was not invited to participate in the pension and profit-sharing plan. He was not provided with W-2 forms, and the Bears never made Social Security deductions from his compensation. Dr. Fox stated that he considered himself to be an employee of Lakeview Orthopaedic Associates, Ltd., and received W-2 forms from that corporation.

As previously stated, the exclusive-remedy provision bars an employee from bringing a common law negligence action against a co-employee. (*McNeil v. Diffenbaugh* (1982), 105 Ill. App. 3d 350, 352, 434 N.E.2d 377.) It has been recognized that there is no clear line of demarcation between the status of employee and independent contractor. The Illinois Appellate Court in *Lister v. Industrial Commission* (1986), 149 Ill. App. 3d 286, 290, 500 N.E.2d 134, stated a number of relevant factors in determining such status, including the following:

> "[The] right to control the manner in which work is done; method of payment; right to discharge; skill required in the work to be done; who provides tools, materials, or equipment; whether the workmen's occupation is related to that of the alleged employer; and whether the alleged employer deducted for withholding tax."

The single most important factor in determining the parties' relationship is the right to control the manner in which the work is done. (*Wenholdt v. Industrial Com.* (1983), 95 Ill. 2d 76, 81, 447 N.E.2d 404.) An independent contractor has been defined as one who undertakes to produce a given result, without being controlled as to the method by which he attains that result. *Alexander v. Industrial Com.* (1978), 72 Ill. 2d 444, 449, 381 N.E.2d 669.

A section 2—619 motion such as the one in the case at bar is a fact motion that amounts essentially to a summary judgment procedure. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1056, 473 N.E.2d 444.) The motion should be granted where the evidence before the court either raises no issue of material fact or where crucial issues of material fact are refuted by an affirmative matter. (*Ralston v.*

*Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444.) In our view, the facts before the trial court on the Bears' motion to dismiss were insufficient to establish as a matter of law that Dr. Fox was an employee rather than an independent contractor. Although Dr. Fox was to treat injured players upon request, the evidence presented by the plaintiffs shows that the Bears were given little control over Dr. Fox's actions in accomplishing this result. He could send a substitute to regular season games if his attendance was not possible and was not obligated to attend practices or preseason games. Preseason physicals took place at Illinois Masonic Hospital using equipment belonging to the hospital. Although Dr. Fox was paid a relatively small retainer covering routine medical services, he would bill the Bears separately for each surgery he performed. Significantly, the plaintiffs presented evidence showing that the Bears did not withhold Social Security from Dr. Fox's compensation and did not provide him with W-2 forms. Dr. Fox stated that he received W-2 forms from Lakeview Orthopaedic Associates, Ltd., and considered himself to be an employee of that corporation. A very small percentage of his practice was devoted to treating Bears' players. Finally, unlike employees of the Bears, Dr. Fox was not provided with benefits such as medical or life insurance, or a pension and profit-sharing plan.

Dr. Fox cites several cases, including *Young v. St. Elizabeth Hospital* (1985), 131 Ill. App. 3d 193, 475 N.E.2d 603, and *Komel v. Commonwealth Edison Co.* (1977), 56 Ill. App. 3d 967, 372 N.E.2d 842, to support his contention that he was an employee. We find important factual differences in these cases which serve to distinguish them from the instant cause. For example, in *Young*, the company made Social Security contributions on the doctor's behalf, and his eligibility for pension and medical insurance benefits was identical to that of other company employees. Also, the doctor's medical support personnel and facilities were provided by the company. In *Komel*, the doctor was employed as a staff physician at a medical facility owned and operated by the company. Unlike Dr. Fox, who received separate, nonfixed fees for each surgery he performed, the doctor in *Komel* received an annual salary which did not depend upon the nature of the treatment he rendered. Also unlike Dr. Fox, the doctor in *Komel* was eligible for company benefits the same as all other company employees. Because the factual settings of *Young* and *Komel* differed so markedly from the one present in the case at bar, we do not find them persuasive on the issue of Dr. Fox's status.

Finally, the plaintiffs contend that they were retained by the Bears as independent contractors and were therefore not co-employ-

ees of Dr. Fox for purposes of the Act. The plaintiffs fail to direct us to any evidence in the record supporting this contention, and we find it unpersuasive. The collective bargaining agreement introduced as an exhibit refers to the players as "employee players" and sets out a comprehensive scheme of benefits, grievance procedures and regulations concerning discipline and players' rights. Copies of the player contracts between the plaintiffs and the Bears show that the Bears exercised considerable control over the plaintiffs' actions both on and off the playing field, as well as during the off-season.

The sole case cited by the plaintiffs in support of their argument that they were independent contractors is *Clark v. Industrial Com.* (1973), 54 Ill. 2d 311, 297 N.E.2d 154. In *Clark*, the court held that a professional jockey who traveled to different racetracks throughout the country and hired himself out for individual races was an independent contractor rather than an employee of one of the horse owners who hired him. The plaintiffs here correctly assert that among the factors which the court relied upon to support that determination were the fact that the jockey retained an agent to obtain mounts for him and the fact that the nature of his work required special skills. However, it is clear that the court also found significant several factors which are not present in the case at bar, such as the fact that the jockey provided his own equipment, worked for many different owners throughout the course of the year, and that his compensation was not subject to deductions for income, Social Security and unemployment compensation taxes. As previously stated, the documents contained in the record before us show that the Bears exercised a great deal of control over the manner in which the plaintiffs performed their work and lead us to conclude that the trial court properly found as a matter of law that they were employees rather than independent contractors.

Accordingly, the judgment of the circuit court is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McMORROW, P.J., and JOHNSON, J., concur.