EVERETT ALEXANDER, Appellant, v. THE INDUS-TRIAL COMMISSION *et al.*—(Bennie Rhodes, d/b/a Rhodes Funeral Service, Appellee.)

*Opinion filed October 6, 1978.*

James F. Gorman, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Scheffres & Scheffres and Zaidenberg, Hoffman & Schoenfeld, of Chicago (Alan J. Scheffres, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

In this workmen's compensation proceeding the sole issue is whether the claimant was an employee or whether he was an independent contractor at the time of his accident. The arbitrator found that an employee-employer relationship existed between the claimant, Everett Alexander, and respondent, Bennie Rhodes. The finding of the arbitrator was affirmed by the Industrial Commission. The circuit court of Cook County set aside the decision of the Commission. The case is before this court pursuant to our Rule 302(a) (58 Ill. 2d R. 302(a)).

Claimant had worked as a union carpenter in Chicago for a period of 18 years. On the day of the accident he was unemployed and looking for a job. An acquaintance introduced him to the respondent, who owned and operated the Rhodes Funeral Service in Chicago. The respondent desired to have the door of the funeral parlor's garage repaired, and asked the claimant whether or not he would be able to fix it. Claimant inspected the door,

informed respondent that he could fix it, and said that it would cost "$20.00 plus materials." The respondent advanced $20 for material to the claimant, who drove to a nearby lumber yard where he had previously done business and purchased the necessary materials to repair the door. Respondent did not tell him where to make the purchase. Claimant used his own truck and tools for the job. He did not, however, have any of his ladders with him, so he used one which he had found in the corner of the garage, and which respondent told him he could use. While he was standing on the ladder repairing a latch on the door he fell, sustaining serious injury to his arm and elbow.

The question of whether claimant was an employee at the time of his accident is the critical issue in this case. Proof that a relationship of employer-employee existed at the time of the accident is an essential element of an award under the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.; Wilhelm v. Industrial Com.* (1948), 399 Ill. 80, 89). On the other hand, it has long been established that an independent contractor is not entitled to compensation under the Act. *E.g., Meredosia Levee & Drainage District v. Industrial Com.* (1918), 285 Ill. 68.

This court has frequently held that the resolution of factual disputes is squarely within the province of the Industrial Commission, and that its determination will not be disturbed unless it is against the manifest weight of the evidence. (*Barricks Corp. v. Industrial Com.* (1969), 44 Ill. 2d 9.) However, this court has not hesitated to set aside a decision of the Industrial Commission when its finding that a person was an independent contractor and not an employee (*O'Brien v. Industrial Com.* (1971), 48 Ill. 2d 304) or when its finding that a person was an employee and not an independent contractor (*Coontz v. Industrial Com.* (1960), 19 Ill. 2d 574) was against the manifest weight of the evidence. We have examined the record in

this case and are convinced that the finding of the Industrial Commission that the claimant was an employee at the time of his accident is against the manifest weight of the evidence, and should therefore be reversed.

In *O'Brien,* this court stated:

"This court has often held that the right to control the manner of doing the work is probably the most important single consideration in determining whether the relationship is that of an employee or an independent contractor." (48 Ill. 2d 304, 307.)

In *Henry v. Industrial Com.* (1952), 412 Ill. 279, 283, this court stated:

"Other factors, such as whether compensation is on a time basis or by the job, the right to discharge, the nature of the workman's occupation, both in terms of the degree of skill required and in its kinship to the regular business of the employer, and the furnishing of materials, equipment or tools, are all to be taken into consideration."

Applying these considerations to the facts of the instant case, it is clear that the evidence overwhelmingly supports the conclusion that the claimant was an independent contractor.

Generally, an independent contractor is one who undertakes to produce a given result, without being controlled as to the method by which he attains that result. (*Franklin Coal & Coke Co. v. Industrial Com.* (1921), 296 Ill. 329.) Thus, an independent contractor executes the work in accordance with his own ideas, without being subject to his employer's ideas in respect to the details of the work. (*Besse v. Industrial Com.* (1929), 336 Ill. 283.) In *Coontz,* this court stated the distinction in this manner: "[A]n employee is at all times subject to the control and supervision of his employer, whereas an

independent contractor represents the will of the owner only as to the result and not as to the means by which it was accomplished." 19 Ill. 2d 574, 578.

In the instant case it is clear that the respondent did not undertake to control or supervise the details of the work done by claimant. The evidence is undisputed that he simply showed the claimant the garage door and accepted the claimant's word that he could repair it. He then gave the claimant $20 and left the premises. He had given no instructions as to how to perform the work, how long the claimant had to work, or when he should quit. He was interested only in the result to be attained. It was the claimant who had complete discretion and control over the method and means by which to attain the result.

Claimant argues that the respondent, while not exercising actual control over the details of the job, had the right to do so, and that such a "right to control" by the respondent supports a finding of employee-employer relationship. This argument is untenable. There is no evidence in the record that respondent had the right to control the method or manner of work done by the claimant. The simple fact of the matter is that the respondent, a funeral director, hired claimant, a skilled carpenter, to perform a task wholly within the claimant's expertise, and totally outside the scope of his own business.

This case is factually quite similar to *Coontz*, where the court stated:

"Looking first to the task performed itself, it was quite apart from the regular business of Coontz [respondent] and it is also apparent that [claimant] was summoned to the home because of his particular skill and experience in splicing heavy ropes. *** [Claimant] was called upon to do a particular job and while it is true that Coontz [respondent] did participate in a discussion and

made a decision as to what the ultimate job would be, *i.e.,* splicing the rope or replacing it, the former was left alone to do the work in any manner he chose, being answerable to Coontz only as to the end result and not as to the means by which it was to be accomplished." (19 Ill. 2d 574, 578.)

This court held in *Coontz* that the claimant was not an employee and set aside an award of the Industrial Commission, which had found that the requisite employer-employee relationship existed. In our case, as in *Coontz,* the claimant was engaged because of his particular skill and experience in doing a particular job, and he was permitted to do the work in any manner he chose, being answerable to the respondent only as to the end result.

Claimant places emphasis on the fact that the respondent "furnished" the ladder used by him in fixing the door. The record discloses that the claimant had all the tools he needed to repair the door with him in his truck except a ladder. The record does not establish that the ladder was "supplied" or "furnished" in the manner that an employer furnishes tools or equipment with which an employee works. The claimant testified that when he was engaged to do the work he told the respondent that he didn't have any ladder with him and stated that the respondent "told me that he had a ladder and I wouldn't have to go home to try to get the ladder." Thus, the alleged "furnishing" of the ladder was an accommodation to the claimant so that he would not have to go to his home to get his own ladder, and in no way altered the fact that the claimant was engaged to perform the work as an independent contractor.

The claimant attempts to show the existence of an ongoing employer-employee relationship on the basis of his testimony that respondent told him there would be other tasks to be performed after the completion of the

garage-door repair. We note that the respondent denied telling the claimant that there would be more work to be done after he repaired the garage door. However, accepting the claimant's version, his testimony does not prove that an ongoing employer-employee relationship was contemplated. Claimant testified, "he told me he had some work he wanted done, to fix an apartment over the funeral home when he got his money together and he also said he had some painting to do." And again, claimant testified that the respondent said, "as soon as he got his money together he would let me do that." On cross-examination claimant answered "that's right" to the question "And he told you there might be other work he wanted but when he got the money he would call you and let you know about it?" This testimony tends to prove nothing with regard to the existence of an employer-employee relationship. It only indicates that there may be some more work that the respondent would at some future date want the claimant to do. It does not show whether the claimant would be performing the future work as an employee or an independent contractor and is not helpful in determining the status of the claimant on the date he was injured.

There was some confusing testimony adduced on arbitration concerning the existence of a W—2 withholding-tax form. On direct examination the claimant testified that the respondent failed to fill out a W—2 form because "he was getting ready to fix the door and it was getting late in the afternoon and he couldn't get his door locked." Ordinarily, evidence that a W—2 form was completed, or that such a form was to be filled out, would tend to show that an employer-employee relationship was intended. Considering the record, however, the claimant's testimony shows no such intent. Respondent testified that a W—2 form was never discussed. And, reading the claimant's testimony, it is clear that he did not testify that he and respondent discussed the W—2 form or that any

thought was given to the completion of such a form. Rather, his testimony was after-the-fact speculation as to why the form was not filled out, and was testified to at a time that claimant was trying to establish the employer-employee relationship retroactively. This testimony has no probative value as to the existence of an employer-employee relationship.

In summation, there is no persuasive evidence in the record to support a finding that claimant was an employee for purposes of the Workmen's Compensation Act. The claimant was a skilled tradesman who performed a single service for the respondent quite apart from the respondent's business. He was to be paid by lump sum for the job, rather than by the hour or piece. The fact that he purchased materials at a lumber yard of his own choosing where he had previously traded is consistent with an independent-contractor relationship. With the exception of the ladder, he used all his own tools and had complete control over the manner in which the job was performed.

The finding of the Industrial Commission that the claimant was an employee for purposes of the Workmen's Compensation Act is against the manifest weight of the evidence. The decision of the circuit court of Cook County reversing the award granted by the Commission is accordingly affirmed.

*Judgment affirmed.*