449 So.2d 90 (1984)
Louise L. PRINCE
v.
BATON ROUGE GENERAL HOSPITAL, et al.
No. 83 CA 0491.
Court of Appeal of Louisiana, First Circuit.
April 3, 1984.
Writ Denied June 1, 1984.
Guy A. Modica, Sr., Baton Rouge, for plaintiff-appellant Louise L. Prince.
Felix R. Weill, H. Evans Scobee, Baton Rouge, for defendant-appellees Baton Rouge General Hosp., The Guest House, Empire Fire and Marine Ins.
Before COVINGTON, COLE and SAVOIE, JJ.
COVINGTON, Judge.
This is an appeal from the trial court's dismissal of the plaintiff's action for benefits under the Workers' Compensation Law. We affirm.
On April 5, 1979, Louise L. Prince was a "sitter" for Ruby Sharp, a patient at Baton Rouge General Hospital's Guest House. While on the premises, Mrs. Prince was proceeding along a walkway and allegedly tripped on an object in her path, a coat hanger. It became entangled in her feet, causing her to fall. Mrs. Prince claims to have suffered severe injuries as a result of the fall. The injuries and resulting medical expenses gave rise to the present suit.
Mrs. Prince filed a petition seeking both workers' compensation benefits and damages in tort for the injuries she allegedly received while on the premises of the Guest House. Prior to the trial, plaintiff settled *91 her claim in tort against Baton Rouge General Hospital and its liability insurer. Trial was thereafter held on the workers' compensation claim.
As the basis for her workers' compensation claim, plaintiff maintained that she was employed by Baton Rouge General Hospital and/or the Guest House as a sitter for certain patients. Because she was injured while employed on the premises, Mrs. Prince contended that provisions of the Louisiana workers' compensation statute should apply to her.
The trial court found that it was not established that an employer-employee relationship existed between Mrs. Prince and the Hospital or the Guest House, and dismissed plaintiff's suit.
Appellant contends that the trial court erred in three respects. First, she disputes the finding that there was no employer-employee relationship between her and the Guest House. Second, she maintains that the court should have found her to be an independent contractor doing manual labor in the trade, business or occupation of the Guest House and, therefore, eligible for the benefits provided by the workers' compensation law. Third, appellant contends that the court should have determined that she was totally and permanently disabled as a result of the injury she claimed to have sustained in the course and scope of her employment.
Appellee submits that the lower court's judgment is correct. First, the court properly found that no employer-employee relationship existed between the appellant and the Guest House. Because such a relationship is a prerequisite to any recovery for workers' compensation benefits, appellee asserts that none of the other errors specified by appellant are applicable. Second, even if the appellant was an independent contractor doing manual labor, such work was for the Sharp family, not for the Guest House. Finally, a determination that the appellant is totally and permanently disabled is not appropriate under the circumstances.
An employer-employee relationship must exist before the provisions of the workers' compensation law apply. LSA-R.S. 23:1021 et seq.; Dupre v. Sterling Plate Glass & Paint Company, Inc., 344 So.2d 1060 (La.App. 1st Cir.1977).
As stated in Loomis v. Highland Hospital, Inc., 274 So.2d 200 (La.App. 2d Cir. 1973):
It is deemed necessary at this point to note that the scope of the workmen's compensation statute is limited to rights and duties that obtain between employers and employees. It follows that the existence of an employer-employee relationship or of a similar relationship between an employee and an independent contractor is an essential requisite to any action arising under the statute. Thus, it must be concluded that this relationship predicated upon a contract must be expressly stated or implied. The burden of proof is upon a claimant to establish this requisite by a reasonable preponderance of the evidence.
In Loomis, the plaintiff was injured while employed as a sitter for a hospital patient. Her duties as a sitter were generally described as minor, non-medical services such as keeping the bed in order, adjusting the patient's position in the bed, and noting her pulse, temperature and blood pressure. The Court found that there was no employment relationship between the hospital and the sitter. The evidence indicated that the sitter had been employed and paid for her services by the patient for whom she worked. The hospital had the responsibility to ascertain that the sitter was qualified to perform the necessary services and that she did her duties according to hospital standards. The hospital's only other connection with the sitter's employment was the calling of the registry to obtain a sitter, as an accommodation for the patient.
This Court recently decided Vaughn v. Baton Rouge General Hospital, 421 So.2d 288 (La.App. 1st Cir.1982), which is similar to Loomis and the case at bar. In Vaughn we affirmed the trial court's decision that *92 the plaintiff, a sitter, was not employed by the Baton Rouge General Hospital Guest House. The plaintiff had been injured when she was helping a patient return to the room and the patient fell, causing her to fall with the patient. She sought workers' compensation benefits on the basis that she was injured while employed by the hospital and/or its extension, the Guest House. She alternatively contended she was an implied, statutory or borrowed employee.
At the outset, this Court stated in Vaughn: "A prerequisite to any action arising under Workmen's Compensation Law is the existence of an employer-employee relationship." Four primary factors were stated as determinative of the "right to control," which was described as the essence of the relationship:
1. Selection and engagement;
2. Payment or wages;
3. Power of dismissal; and
4. Power of control.
The Vaughn Court then proceeded to determine if an employment relationship existed. It found that she was not an actual or implied employee of the Hospital and that the allegation that plaintiff was a statutory or borrowed employee was not supported by the evidence. Mrs. Vaughn had listed herself with a private agency in seeking employment as a sitter. At the time she fell, the plaintiff was acting as a sitter for Mrs. Brown, a patient at the Guest House. The plaintiff was paid by the patient's family. The Court concluded that Mrs. Brown and her family held the ultimate control over Mrs. Vaughn's employment. Baton Rouge General Hospital would have had the power to exclude the plaintiff from working at the Guest House, but it did not have the power to terminate her employment with Mrs. Brown. Mrs. Vaughn could have continued to work for Mrs. Brown at any other location, even if the hospital did not want her working at the Guest House. The Court found: "The power of dismissal was not Baton Rouge General Hospital's, but Mrs. Brown's."
By applying the Vaughn factors to the relationship between the Baton Rouge General Hospital Guest House and the appellant in the instant case, it can be readily seen that no employment relationship existed. The employer-employee relationship was between Mrs. Prince and Ruby Sharp, the patient for whom she was sitting.
(1) Selection and engagement
Mrs. Prince's initial contact with the Guest House was through a sitter service. This service sent her to various places, such as hospitals or nursing homes. The testimony is conflicting as to how Mrs. Prince got her job sitting for Mrs. Sharp. The testimony of Mrs. Edna Harelson, the patient's daughter, indicates that she hired Mrs. Prince. She stated that she had met Mrs. Prince in the nursing home and asked her to sit for Mrs. Sharp. She said that she felt sure she had discussed Mrs. Prince's hours and rate of pay with her. Mrs. Harelson also testified that she had assigned duties to Mrs. Prince, such as keeping Mrs. Sharp clean and comfortable. The Sharp family paid the sitter directly. Mrs. Prince testified that she had been contacted by the Director of Nursing of the Hospital. Mrs. Betty Taylor, the Director of Nursing Services at the time, testified that the families hired the sitters, not the Guest House.
We find, as did the trial court, that the power of selection and engagement was with the Sharp family, not the Guest House. What contact the Guest House made with Mrs. Prince was as an accommodation to the Sharp family. The evidence supports the trial court's finding that Mrs. Harelson was the one who sought the employment of Mrs. Prince as a sitter for Mrs. Sharp.
(2) Payment of wages
The Sharp family paid Mrs. Prince. Sign-in records or time-sheets were kept in Mrs. Sharp's room for each sitter to indicate the hours and days she worked. From this information, the Sharp's would determine the amount to pay.
*93 Mrs. Prince testified that she received her wages from the Sharp family. She also stated that no social security or income tax was withheld from her paycheck because she was "self employed." According to the testimony of J.M. Powell, Administrator of the Guest House, no employment records are kept on sitters. The Assistant Administrator, Mary M. Powell, confirmed that records are not kept on sitters, and that the Guest House did not pay Mrs. Prince. The Sharp family, not the Guest House, had the responsibility for paying Mrs. Prince. The Guest House did not make any salary payments to the sitter; the payments were made by members of the Sharp family.
(3) Power of dismissal
The testimony of Ruby Davis, Mrs. Sharp's granddaughter, indicated that the power of dismissal was with the Sharp family. She testified that Mrs. Prince had been terminated at least once before by her uncle. This was confirmed by Mrs. Prince.
Mrs. Taylor testified that her primary responsibility as Director of Nursing Services was to see that the patients were receiving adequate care. In connection with this duty, she was responsible for the activities of nurses and aides who provided patient care. According to Mrs. Taylor, Mrs. Prince disrupted the daily activities of the staff by improperly summoning assistance on several occasions. For instance, she would press the emergency button for help in lifting Mrs. Sharp even though there was no emergency situation. After several such instances, Mrs. Taylor told Mrs. Prince that she would not be on the case at the Guest House any longer.
In Vaughn the Court stated that the power to exclude the sitter from working at the Guest House was not equivalent to the power of dismissal. The sitter was free to sit for the patient at any other facility or at her home without the approval of the Guest House. As in Vaughn, the Guest House only had the power to exclude the plaintiff from working there, not to terminate her employment with Ruby Sharp. Mrs. Taylor took the action of removing Mrs. Prince from the Guest House when she repeatedly interfered with the daily care which had to be provided to the other patients. The record supports the conclusion that the Sharp family, not the Guest House, held the power to dismiss Mrs. Prince from her job as sitter for Ruby Sharp.
(4) Power of control
The Sharp family held the power of control over Mrs. Prince's position as a sitter for Ruby Sharp. Mrs. Harelson testified that she told Mrs. Prince what she wanted her to do for her mother. The hours and days worked were set by the family and Mrs. Prince, not the Guest House. Mrs. Prince was responsible for obtaining a replacement if she wanted a day off. Mrs. Prince considered herself self-employed for purposes of social security and income tax deductions. During the pertinent period, Mrs. Prince provided sitter services for Mrs. Ruby Sharp only, not for any other patients in the Guest House.
On this point, the trial judge commented, as follows:
"Insofar as power of control, I agree with the Court in the Vaughn case when it said that the hospital, the guest house, did exercise minimal control over some activities of the claimant, Mrs. Prince, and her patient. It said that such control was limited to insure that extablished medical practices were followed. I can readily see the necessity of a hospital or nursing home having certain requirements, certain control over sitters, to make sure that the health and welfare of those patients are not jeopardized because of the inability or whatever of a sitter. There has to be some uniformity. Just because a hospital requires this uniformity does not constitute, in my opinion, control sufficient to say that the guest house has the control, not the family."
Mrs. Taylor testified that her direction and control over sitters was limited to insuring that they provided adequate care to *94 their patients according to established medical practices. The sitters were expected to work under the direction of and in cooperation with the nursing staff to insure proper care was provided to the patients and to avoid needless interference with day-to-day functions of the Guest House. In addition, such cooperation was necessary to avoid conflicts in policy and violations of state or federal regulations regarding the facility.
In Vaughn the control of the Guest House was found to be limited to insuring that established medical practices were followed. This supervision was held to be insufficient to vest the power of control over the plaintiff's actions in the hospital. Like Vaughn, the instant case presents a situation in which the Guest House is entrusted with the care of over one hundred patients. A certain amount of control over the activities of the sitters is necessary to make sure that the health and welfare of the patients are not jeopardized because of a sitter's activities. Such requirement of conformity to established medical practices does not constitute sufficient control so as to take this power from the hands of the Sharp family. We find that the Sharp family, not the Guest House, had the power of control and was in control of Mrs. Prince's employment as a sitter for Mrs. Sharp.
On the question of "independent contractor," LSA-R.S. 23:1021(5) provides:
"Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.
According to Lushute v. Diesi, 354 So.2d 179 (La.1977), if a substantial part of an independent contractor's work time is spent in manual labor and the work performed by him is a part of the principal's trade, business or occupation, then the independent contractor is covered under the workers' compensation law.
As discussed above, the Sharp family, not the Guest House, was the employer of Mrs. Prince. She was under the control of the Sharps, not under the control of the Guest House. The work performed by Mrs. Prince was for Mrs. Sharp, not for the Guest House. The providing of sitters for patients is not a part of the Guest House's business. Mrs. Prince was not an independent contractor who was performing manual labor in furtherance of the Guest House's business. Lushute v. Diesi; Brown v. State Farm Fire & Casualty Company, 407 So.2d 1251 (La.App. 3d Cir. 1981). We hold that the provisions of LSA-R.S. 23:1021(5) do not operate to provide workers' compensation benefits to Mrs. Prince.
A determination of total and permanent disability for purposes of workers' compensation benefits is applicable only to situations in which there is an employer-employee relationship. No employer-employee relationship existed between the appellant and the appellee, so a determination of permanent and total disability is not required.
For the foregoing reasons, we affirm the judgment at appellant's costs.
AFFIRMED.