SIDNEY L. DAVIS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Charles J. Gramlich Law Offices, Appellee).

Fourth District (Industrial Commission Division)    No. 4—93—0408WC

Argued March 1, 1994.—Opinion filed May 13, 1994.—Rehearing denied June 30, 1994.

RAKOWSKI, J., dissenting.
RARICK, J., dissenting.

Charles N. Edmiston, of Kanoski & Associates, of Rushville, for appellant.

Patrick J. Cadigan, of Hinshaw & Culbertson, and Theodore J. Harvatin, of Gramlich Law Offices, both of Springfield, for appellee.

JUSTICE SLATER delivered the opinion of the court:

Claimant, Sidney Davis, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) seeking benefits for injuries which allegedly arose out of and in the course of his employment with respondent, Charles Gramlich. Following a hearing, the arbitrator found that no employer-employee relationship existed between respondent and claimant. That finding was affirmed by the Industrial Commission (Commission). The circuit court confirmed the decision of the Commission, and this appeal followed.

The sole issue raised on appeal is whether the Commission's determination that no employer-employee relationship existed was against the manifest weight of the evidence. We find that it was not and therefore affirm.

At the arbitration hearing, claimant testified that he was hired by respondent on or about July 1, 1987. Claimant had responded to a classified advertisement placed in the newspaper by the respondent. The advertisement stated as follows:

"I need an able-bodied jack of all trades for a variety of jobs. This is a permanent, part-time position, 20-25 hours per week. It involves some farm work and maintenance, and yard care. The ideal candidate would be a semi-retired person with some knowledge of carpentry. Starting is $6.00 per hour. Please send a brief resume stating your job history and references to P.O. Box 5235, Springfield, Illinois 62705."

Claimant submitted a resume and was contacted by phone. He went to respondent's law office for an interview. During the interview, respondent asked claimant what type of vehicle he owned and what experience and abilities he had. Respondent indicated that the job would include mowing, fencing, carpentry, plumbing and electrical

work, and generally caring for respondent's farm and other properties.

The actual work performed by the claimant was similar to that described by the respondent at the interview. The claimant worked for four weeks before he was injured. During this time, he assembled a piece of furniture, performed carpentry work in a house, repaired a tractor and put a mower together. He erected a fence, cut weeds, applied floor leveler to a floor, mounted some doors and began building a pole barn.

Claimant was paid $6 an hour. He worked from 40 to 50 hours each week. He turned in a time sheet each week and was reimbursed for any materials he had purchased during the week. Claimant would contact respondent each day to determine what work was to be done the following day. He stated that the time he arrived and left work each day was left up to him. He generally tried to get to work by 7 or 8 a.m., and left when he had finished or when the sun went down. Claimant testified that when he was given his first paycheck, respondent indicated that he was not going to withhold any taxes from claimant's check, and that it was up to claimant to decide whether to pay taxes at the end of the year. Claimant stated that he and respondent did not discuss any benefits associated with the job.

Claimant testified that on a few occasions respondent came out to where claimant was working to check on the progress of a particular job. If he was unsatisfied, respondent would tell claimant that he wanted a job done a different way. When claimant was laying out a fence to be built on the farm, respondent came out and indicated where he wanted the fence line to run. Respondent did not go to the jobsite while claimant was building the fence.

On July 27, 1987, claimant was beginning construction of a barn for respondent. Claimant rented a flatbed truck and hired a driver. He purchased used telephone poles for use in the construction of the barn. The poles were loaded on the truck and taken to the farm. While unloading the poles at the construction site, claimant was knocked to the ground by a falling pole. A number of poles fell on top of him and he experienced pain in his leg, back, arms and sides. He was transported by ambulance to Memorial Medical Center in Springfield.

X rays of the claimant revealed a fracture of the left tibia and a compression fracture of the T12 vertebrae. Claimant was hospitalized for 10 days. He was placed in a body cast as well as a straight leg cast. Claimant received physical therapy and was discharged on September 17, 1987. He was released to return to light-duty work on November 2, 1987. Claimant testified that he still experiences pain in his leg and back and he has constant numbness in his hands.

Respondent testified that when he first spoke with claimant at the interview, he indicated that claimant would "be his own boss," and that claimant was free to set his own hours and report for work and leave whenever he wanted. Respondent stated that he told claimant that he would have to pay his own taxes and that the job did not include any benefits. He stated that claimant had no objection to this arrangement because claimant was concerned that any benefits might interfere with his teamster's pension. Respondent testified that he believed claimant was an independent contractor and that he told claimant that he was being hired as an independent contractor at the time of the interview.

Respondent stated that he had claimant prepare a time sheet for income tax purposes. He left it up to claimant to call him if he ran out of work or needed information on what to do next. He indicated that claimant would purchase any materials he needed and would be reimbursed at the end of the week.

Respondent testified concerning the various projects completed and tasks performed by the claimant. Regarding the fence claimant erected on the farm, respondent stated that his only involvement in that job was to show claimant where he wanted the fence placed. He testified that he had never personally strung fence, and claimant had said that he knew how. From Monday to Friday during the four weeks claimant was on the job, respondent was at his law office. He stated that he may have seen claimant on the job doing yard work on one Saturday. When respondent spoke to claimant about building a pole barn, claimant suggested that the rural electric cooperative might have some poles for sale. Claimant volunteered to arrange for the transportation of the poles to the construction site. Respondent stated that the next thing he knew, claimant was injured while unloading the poles.

■ The determination of whether a claimant is an independent contractor or an employee is critical because an employer-employee relationship is an essential prerequisite for an award of benefits under the Act. (*Alexander v. Industrial Comm'n* (1978), 72 Ill. 2d 444, 381 N.E.2d 669.) There is no inflexible rule for determining whether an individual is an employee or an independent contractor. (See *Earley v. Industrial Comm'n* (1990), 197 Ill. App. 3d 309, 553 N.E.2d 1112; *Young America Realty v. Industrial Comm'n* (1990), 199 Ill. App. 3d 185, 556 N.E.2d 796.) Many factors in the relationship of the parties are to be considered in making this determination, including the right to control the manner in which the work is done; the method of payment; the right to discharge; the skill required in the work to be done; who provides tools, materials or equipment; and

whether the alleged employer deducted for withholding tax. (*Wenholdt v. Industrial Comm'n* (1983), 95 Ill. 2d 76, 447 N.E.2d 404; *Lister v. Industrial Comm'n* (1986), 149 Ill. App. 3d 286, 500 N.E.2d 134.) Among these factors, the right to control the work is the single most important factor in determining the parties' relationship. (*Wenholdt*, 95 Ill. 2d at 81, 447 N.E.2d at 407.) However, no one factor is determinative. (*Earley*, 197 Ill. App. 3d at 314-15, 553 N.E.2d at 1116.)

> "When elements of both the relationship of employee and of independent contractor are present and the facts permit an inference either way, the Commission alone is empowered to draw the inferences, and its decision as to the weight of the evidence will not be disturbed on review." *Young America Realty*, 199 Ill. App. 3d at 188, 556 N.E.2d at 798.

■ After carefully reviewing the record, we find that the Commission's decision that claimant was an independent contractor was not against the manifest weight of the evidence. It is clear that respondent exercised very little control over claimant's work. Respondent was interested in having certain tasks and projects completed. The manner and method in which those tasks were done was left almost entirely to the discretion of the claimant. Respondent did not supervise claimant. The claimant was free to begin and end work whenever he wished. While respondent may have occasionally been present at a jobsite and corrected claimant's work on a particular project, respondent's instructions were generally limited to informing claimant of what job was to be done and where, such as when respondent gave claimant instructions regarding where to erect the fence. Aside from these general instructions, claimant was free to complete each job by any means or method he chose. Moreover, respondent testified that he informed claimant at the beginning of the relationship that claimant would have to pay his own taxes and would receive no benefits.

The Commission's decision is also supported by the circumstances surrounding the project which claimant was working on when he was injured. It was claimant who rented a truck, hired a driver, purchased the telephone poles and transported them to the barn construction site, all without supervision or instruction from respondent. In fact, respondent testified that he was not even aware that claimant had rented a truck and hired a driver until after claimant was injured.

It is true that certain factors in this case were indicative of an employer-employee relationship. For example, claimant was paid a straight hourly wage rather than a certain amount for each project completed. However, as we stated above, when reasonable inferences

from the facts may be drawn either in favor of or against an employment relationship, the decision of the Commission must be affirmed. (*Young America Realty*, 199 Ill. App. 3d 185, 556 N.E.2d 796.) In viewing the facts and circumstances of this case as a whole, we are of the opinion that the Commission could reasonably conclude that claimant's relationship with respondent was that of an independent contractor.

For the reasons stated above, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

McCULLOUGH, P.J., and WOODWARD, J., concur.

JUSTICE RAKOWSKI, dissenting:

Although I agree with the majority regarding the facts and statement of law, I do not agree with the conclusion. Accordingly, for the following reasons, I would reverse the decision of the circuit court.

The claimant was hired as a handyman. The newspaper advertisement stated that the job was a $6-per-hour, permanent position involving farm maintenance and yard care. In my view, these facts strongly suggest an employer-employee relationship.

Although the majority opinion concedes that the above facts are indicative of an employer-employee relationship, it reaches an opposite conclusion because the claimant was free to start work when he wished, was not supervised, and paid his own taxes.

As previously stated, the claimant was a handyman. I really am not sure what kind of supervision the majority is searching for. One tells a handyman to cut the grass or repair a fence, and the handyman does it. Certainly, the fact that the employer is not hovering over him at every moment cannot transform one who is otherwise an employee into an independent contractor.

Claimant generally started at 7 or 8 a.m. and worked until he finished his assigned tasks or when the sun went down. I am at a loss to understand how this fact is indicative of an independent contractor's status. That was the agreement the parties made at the time the claimant was hired.

Regarding taxes and benefits, the claimant stated that he did not object because he was concerned that such might interfere with his pension.

In sum, there are many facts which point to an employer-employee relationship. The majority concedes this. Contrary to the

majority, I fail to find any facts which lead to the conclusion that the claimant was an independent contractor. In my view, the opposite conclusion (employer-employee relationship) is clearly apparent.

JUSTICE RARICK, dissenting:

Because I too believe claimant was an employee, and not an independent contractor, I join in Judge Rakowski's dissent. I write this dissent solely to point out additional reasons why I so conclude. First, claimant was hired for a *permanent* part-time position involving many different job duties. He was not hired to complete a particular task, but furnished recurring services. Compensation was made on an hourly basis, not by the job or upon completion of individual projects. Even after he was injured, claimant continued to work for Gramlich as a janitor in Gramlich's law offices. Second, Gramlich furnished some of the equipment needed for claimant's tasks, and claimant was not required to provide his own tools. Third, Gramlich had the right to, and in fact often did, control the manner in which claimant did his work. For these reasons, I believe claimant's relationship with Gramlich was that of an employee and not an independent contractor. Claimant therefore should have been awarded benefits pursuant to the Act.