DEBRA NETZEL, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*
(Presbyterian Nursing Home, Appellant.)

First District (Industrial Commission Division) No. 1—96—1571WC

Opinion filed January 14, 1997.—Rehearing denied March 11, 1997.

McCULLOUGH, P.J., dissenting, joined by HOLDRIDGE, J.

James W. Stevenson and Janet R. Denando, both of Wiedner & McAuliffe, Ltd., of Chicago, for appellant.

Michael G. Patrizio and Joseph J. Leonard, both of Dowd & Dowd, Ltd., of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Debra Netzel, sought benefits pursuant to the Workmen's Compensation Act (Act) (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*) for injuries sustained to her back on October 12, 1978, at respondent Presbyterian Nursing Home (Home). The arbitrator determined that claimant failed to prove an employer-employee relationship existed between claimant and respondent and accordingly denied benefits. The Industrial Commission (Commission) affirmed the decision of the arbitrator. The circuit court of Cook County, however, set aside the decision of the Commission, holding that as a matter of law the Commission erred in denying claimant compensation. The court further found in the alternative that the Commission's decision was against the manifest weight of the evidence and remanded the cause to the Commission for further proceedings. Respondent appealed the circuit court's decision, but we dismissed the appeal because, in light of the order of remand, the circuit court's decision was not final.

On remand, the Commission found an employer-employee relationship existed between claimant and respondent and further found a causal connection between claimant's injuries and the October 12, 1978, accident. The Commission, in turn, remanded the cause back to the arbitrator for a further hearing and determination on the issues of temporary total disability, medical expenses, permanent disability and average weekly wage. The arbitrator concluded claimant sustained an accident arising out of and in the course of her employment and awarded 60⁶/₇ weeks of temporary total disability benefits, medical costs of $19,924.60 and permanent disability to the extent of 25% loss of use of a person. The arbitrator also awarded attorney fees and penalties under sections 19(k) and 19(l) of the Act (Ill. Rev. Stat. 1977, ch. 48, pars. 138.19(k), (l)). On review, the Commission vacated the award of penalties and attorney fees but otherwise affirmed the arbitrator's decision. The circuit court confirmed the decision of the Commission. Respondent appeals both decisions of the circuit court.

The issues presented on appeal are whether an employee-employer relationship existed in this instance and whether the award of compensation is against the manifest weight of the evidence. Also at issue is whether the determination of claimant's status is a question of law or a matter of manifest weight of the evidence.

On October 12, 1978, claimant, age 21, was an unlicensed private duty nurse caring exclusively for one patient at Presbyterian Nursing Home. Claimant had been caring for this same patient since June of 1978 and had learned of her need for assistance through the Altru Nurse Registry (Altru). Claimant initially registered with Altru in April 1976 and signed a contract indicating she was self-employed. Over the two-year period, claimant had attended to patients in various nursing homes, including respondent, through Altru. When claimant was first contacted by Altru to care for this particular patient at respondent Home, claimant had the option of either accepting or refusing the assignment.

Claimant testified her work day at Presbyterian Nursing Home began with signing in at the first-floor nursing office. According to respondent's policies, claimant was to report for duty not less than 15 minutes before shift changes. Claimant would then proceed to the floor where her patient was located and sign in at the nursing station on that floor. The rest of the day was spent with the patient, assisting her in eating meals, dressing, and daily care activities, as well as transporting her to and from therapy. All supplies needed to attend to her patient were supplied by respondent. Claimant was expected to stay in her patient's room unless something specific, such as therapy, took her elsewhere. Claimant was not to attend to any other patients at the Home, although she had at least on one occasion assisted another nurse with a different patient than her own. Claimant was responsible for her own meals, but according to respondent's policies, she was not allowed to leave the premises and she was not allowed to eat in the patient's room. Mealtimes were to be arranged with the nurse in charge of her patient's unit. At the end of the day, claimant had to sign out and update the nurses on duty as to her patient's condition. Claimant was paid directly by the patient's family and she, in turn, turned over a set percentage to Altru. Claimant was responsible for her own uniform, and when she was unable to work, she was required to contact Altru for a replacement. Claimant was also responsible for filing her own taxes and procuring her own insurance.

Respondent's policies specifically stated that all private duty nurses were under the supervision of the charge nurse of the unit to which they were assigned and were expected to abide by all of

respondent's rules and regulations. Respondent had the right to restrict or dismiss any nurse from private duty practice for unprofessional conduct, negligent or improper patient care, or failure to comply with respondent's policies and standards.

On October 12, 1978, claimant was lifting and assisting her patient into the bathroom when the patient placed all her weight on claimant. Claimant was bent over at the time and felt immediate pain in her back. After she was able to get the patient back to bed, claimant sought medical treatment. Claimant was hospitalized, placed in pelvic traction and given daily physical therapy. Claimant was released from the hospital on November 9, 1978, whereupon she underwent five weeks of out-patient physical therapy, unfortunately with little success. Claimant was rehospitalized in January 1979. The myelogram and venogram conducted during the second period of hospitalization revealed a possible herniated disc. On her doctor's recommendation, claimant traveled to Canada to receive a chymopapain injection. The injection failed, however, and claimant was hospitalized a fourth time in December 1979. Improved testing revealed a disc herniation at L3-L4. Claimant subsequently underwent a laminectomy in June 1981 and eventually was discharged from her doctor's care, although she continued to have some back and leg discomfort. Claimant later relocated to Arizona and sustained a work injury in 1984 which resulted in further lumbar surgical procedures. Claimant ultimately was discharged from a doctor's care in September 1991.

■ We initially note that there is no rigid rule of law governing the determination of whether an employer-employee relationship exists. *Ragler Motor Sales v. Industrial Comm'n*, 93 Ill. 2d 66, 71, 442 N.E.2d 903, 905 (1982). The answer in each situation depends on the facts of the particular case. And, while the facts here are undisputed, when such facts permit more than one reasonable inference, that is, that claimant was an employee or an independent contractor, then a question of fact, not law, is presented. See *Kirkwood v. Industrial Comm'n*, 84 Ill. 2d 14, 19-20, 416 N.E.2d 1078, 1079-80 (1981); *Earley v. Industrial Comm'n*, 197 Ill. App. 3d 309, 318, 553 N.E.2d 1112, 1118 (1990). Accordingly, the Commission's determination of the employment relationship will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *Kirkwood*, 84 Ill. 2d at 20, 416 N.E.2d at 1080; *Bauer v. Industrial Comm'n*, 51 Ill. 2d 169, 172, 282 N.E.2d 448, 451 (1972); *Reo Movers, Inc. v. Industrial Comm'n*, 226 Ill. App. 3d 216, 220, 589 N.E.2d 704, 708 (1992). In this instance, the circuit court determined the Commission erred as a matter of law in denying claimant compensation. The court, in the

alternative, also ruled that the Commission's initial finding of no employer-employee relationship was against the manifest weight of the evidence. We agree with the circuit court's alternative finding.

■ The determination of whether a particular claimant is an independent contractor or an employee is crucial because an employer-employee relationship is an essential prerequisite for an award of benefits under the Act. *Davis v. Industrial Comm'n*, 261 Ill. App. 3d 849, 852, 634 N.E.2d 1117, 1119 (1994); *Young America Realty v. Industrial Comm'n*, 199 Ill. App. 3d 185, 188, 556 N.E.2d 796, 798 (1990). Many factors in the relationship of the parties are to be considered in making this determination, including the right to control the manner in which the work is done; the method of payment; the work schedule; the right to discharge; who provides tools, materials or equipment; the skill required in the work to be done; whether the worker's occupation is related to that of the employer; and who deducts or pays for insurance, social security and taxes. *Ragler Motor*, 93 Ill. 2d at 71, 442 N.E.2d at 905; *Young America Realty*, 199 Ill. App. 3d at 188-89, 556 N.E.2d at 798; *Earley*, 197 Ill. App. 3d at 314-15, 553 N.E.2d at 1116. While the right to control the work is the single most important factor in determining the parties' relationship (see *Wenholdt v. Industrial Comm'n*, 95 Ill. 2d 76, 81, 447 N.E.2d 404, 407 (1983); *Bauer*, 51 Ill. 2d at 172, 282 N.E.2d at 450), no one factor is determinative (*Davis*, 261 Ill. App. 3d at 853, 634 N.E.2d at 1119; *Young America Realty*, 199 Ill. App. 3d at 189, 556 N.E.2d at 799).

■ It is conceded that claimant's job as an unlicensed private duty nurse at respondent Home contained elements of both an independent contractor and an employee relationship. The weight of the evidence in this instance, however, supports the conclusion claimant was an employee and, as such, was entitled to benefits under the Act. As clearly outlined in respondent's private duty nurse instruction sheet, respondent not only had the theoretical right to control, it did in fact control, claimant's activities and the method and manner in which she performed her duties. Claimant was not just subject to regulations for the orderly administration of the Home; the entire scope of her work and day was controlled by respondent. In essence, respondent regulated claimant's movement from the time she entered its doors. Respondent provided claimant with all equipment necessary to perform her duties, and the head nurse gave claimant regular instructions pertaining to the care and condition of her patient. Claimant also required supervision for the more complex tasks necessary to care for her patient and was instructed to provide a verbal report to the nurse in charge whenever she left duty. Equally

important is the fact that respondent had the right to discharge claimant for any violations of its rules and regulations or for unprofessional conduct or improper patient care. We also note claimant's work was directly related to respondent's business. Such factors support a finding of an employee-employer relationship in this instance. Compare *Abramson v. Long Beach Memorial Hospital*, 103 A.D.2d 866, 478 N.Y.S.2d 105 (1984), with *Prince v. Baton Rouge General Hospital*, 449 So. 2d 90 (La. App. 1984).

It is also conceded that other factors present, such as the method of pay, point to an independent contractor status. The entire balance of the factors, however, clearly weighs in favor of finding an employee relationship. See *Ragler Motor*, 93 Ill. 2d at 72, 442 N.E.2d at 905-06; *Young America Realty*, 199 Ill. App. 3d at 189-90, 556 N.E.2d at 799. Claimant was therefore entitled to benefits under the Act, and the Commission's decision awarding temporary total disability, medical and permanency benefits is amply supported by the manifest weight of the evidence. Prior to the October 12, 1978, accident, claimant had no back problems. After the accident, claimant required several periods of hospitalization and ultimately a lumbar laminectomy. Any reinjury in 1984 does not affect the award of benefits pertaining to her original accident in 1978.

For the aforementioned reasons, the decision of the Commission on remand finding an employer-employee relationship and awarding benefits, as confirmed by the circuit court of Cook County, is affirmed.

Judgment affirmed.

RAKOWSKI and COLWELL, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, dissenting:
I respectfully dissent.

On August 24, 1994, the Commission affirmed the original decision of the arbitrator to the effect that no employee-employer relationship existed at the time of the October 12, 1978, accident. Although the circuit court reversed and remanded and the arbitrator and Commission have issued new decisions on remand, this court first determines the propriety of the original Commission decision before proceeding to an analysis of the decision entered on remand. *University of Illinois v. Industrial Comm'n*, 232 Ill. App. 3d 154, 157, 596 N.E.2d 823, 826 (1992).

The circuit court determined that the Commission's August 24, 1984, decision was erroneous as a matter of law or, in the alternative, against the manifest weight of the evidence. The majority

indicates agreement with the circuit court's alternative finding, the manifest weight determination.

The Commission's first decision determined that claimant was not an employee of respondent, but was a contractual employee of the family of the patient she was attending. As the majority states, this unlicensed person performed a job for the patient at respondent's nursing home that contained elements of both independent contractor and an employee relationship. According to the majority, factors "such as the method of pay, point to an independent contractor status." 286 Ill. App. 3d at 555. The evidence is clear that respondent had the ultimate responsibility for the care of the elderly patient. Claimant was hired by the family to attend only this patient. She had no responsibilities with regard to respondent's operation, and respondent rightfully restricted her movements to being with this patient. Claimant testified these restrictions were similar in the various nursing homes and hospitals in which she attended patients on a private duty basis. Marilyn Schultz, respondent's director of nursing, testified that there were duties imposed on respondent in the care of patients by regulations of the state and city. Claimant had the right to refuse to take a position offered through the registry, she provided her own uniform, and was paid directly by the patient's family. She in turn paid the registry (Altru) 7% of her income. Respondent had no control over her work schedule, her pay rate, or fringe benefits. If claimant needed a day off, she called the registry to arrange a replacement, then simply notified respondent that a replacement would be coming. Although the respondent could refuse to allow claimant to work on its premises, there was no evidence that the family was prevented from moving the patient and having claimant continue in attendance. Respondent did not pay claimant, withhold social security or income taxes, or provide group insurance for claimant. Instead of considering these factors as supporting the Commission decision, the majority reweighs the evidence and finds the balance of factors in favor of finding an employee relationship.

Assigning weight to the evidence is the function of the Commission, not the reviewing court. *Smith v. Industrial Comm'n*, 98 Ill. 2d 20, 23, 455 N.E.2d 86, 88 (1983). Here, there was evidence supporting the original Commission decision, and it is not against the manifest weight of the evidence. The Commission decision of August 24, 1984, should have been confirmed. The majority, by judicial edict, is expanding the coverage of the Act to a new segment of the work force. If coverage is to be appropriate in this type of case, it is better to be done by legislative enactment.

HOLDRIDGE, J., joins this dissent.